848 F.2d 189
 13 O.S.H. Cas.(BNA) 1720, 1988 O.S.H.D. (CCH)
P 28,209
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DUFF TRUCK LINE, INC., Petitioner,
v.
William E. BROCK, Secretary of Labor; John A. Pendergrass,
Assistant Secretary of Labor, Occupational Safety
and Health; and Hosler Robinson, Respondents.
 No. 87-3324.
 United States Court of Appeals, Sixth Circuit.
 May 4, 1988.
As Amended June 24, 1988.
 
 Before BOYCE F. MARTIN Jr. and ALAN E. NORRIS, Circuit Judges and CHARLES W. JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Duff Truck Line, Inc. ("Duff"), a short-haul carrier specializing in overnight deliveries, petitions this court for review of an order of the Secretary of the United States Department of Labor ("Secretary"), entered on March 6, 1987, finding that Duff had violated the employee protection provision of the Surface Transportation Assistance Act of 1982, 49 U.S.C. Sec. 2305(b), when it suspended Hosler Robinson, on January 31, 1985, for his refusal to drive his regular overnight run from Duff's branch terminal in Louisville, Kentucky to Lima, Ohio.
 
 I. BACKGROUND
 
 2
 Robinson was employed by Duff at its branch terminal in Louisville, Kentucky. It was customary for him to drive the same tractor on the run from Louisville to Lima over Interstate Routes 71 and 75. Robinson and his witnesses testified that the tractor was difficult to handle in ice and snow due to the type of tires mounted on it, and because the front end tended to rise when the tractor pulled a loaded trailer.
 
 
 3
 On January 31, 1985, Robinson advised Duff's terminal supervisor, Damien Abell, that he was not going to drive that evening because freezing rain had fallen, it was beginning to snow, and television stations had issued weather warnings advising against driving on highways going north from Louisville. Abell advised him that his refusal to drive would be considered a resignation. Robinson called his union steward, Jerry Veltman, who then called state highway patrol stations at Lagrange and Walton, Kentucky. Veltman told Robinson that the stations reported that the highway between Walton and Cincinnati was shut down and that Interstate 71 was almost impassable.
 
 
 4
 When Robinson continued to refuse to drive, Abell sent him a letter confirming that his refusal constituted "voluntary quit." He also posted a notice warning all drivers that refusing to work due to weather conditions would not be tolerated.
 
 
 5
 Robinson was permitted to return to work after union grievance procedures resulted in a reduction of his penalty to a suspension. Duff also was required to pay him for three of the seventeen working days in the suspension period. Robinson retired on March 16, 1985, with full retirement benefits. His suspension did not result in the loss of any other pay or benefits.
 
 
 6
 On April 30, 1985, Robinson filed a complaint with the Secretary, alleging that Duff had fired him in violation of 49 U.S.C. Sec. 2305(b). The Secretary, after investigation, agreed with Robinson. However, after a hearing requested by Duff, an administrative law judge recommended that the complaint be dismissed. Upon de novo review, the Secretary rejected the recommendation of the A.L.J., and ordered Duff to pay Robinson back pay for the seventeen working days included in the suspension period, less three days' compensation which he had already received as a result of the grievance procedures.
 
 II. INTERPRETATION OF 49 U.S.C. Sec. 2305(b)
 
 7
 We are first required to determine whether the Secretary was correct in interpreting 49 U.S.C. Sec. 2305(b) as justifying Robinson's refusal to drive his run because operation of the vehicle would have violated a motor vehicle safety regulation, specifically, 49 C.F.R. Sec. 392.14 (1987). The standard of review governing the Secretary's interpretation of a statute is whether the "interpretation is reasonable, consistent, and persuasive." Whiteside v. Secretary of Health & Human Services, 834 F.2d 1289, 1292 (6th Cir.1987).
 
 The statute reads as follows:
 
 8
 No person shall discharge, discipline, or in any manner discriminate against an employee with respect to the employee's compensation, terms, conditions, or privileges of employment for refusing to operate a vehicle when such operation constitutes a violation of any Federal rules, regulations, standards, or orders applicable to commercial motor vehicle safety or health, or because of the employee's reasonable apprehension of serious injury to himself or the public due to the unsafe condition of such equipment. The unsafe conditions causing the employee's apprehension of injury must be of such nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a bona fide danger of an accident, injury, or serious impairment of health, resulting from the unsafe condition. In order to qualify for protection under this subsection, the employee must have sought from his employer, and have been unable to obtain, correction of the unsafe condition.
 
 
 9
 49 U.S.C. Sec. 2305(b) (emphasis added).
 
 
 10
 The first sentence of 49 U.S.C. Sec. 2305(b) protects an employee who refuses to drive "when" the operation would violate a federal motor vehicle safety or health regulation or "because" he reasonably apprehends serious injury due to the unsafe condition of equipment. The Secretary has interpreted the "when" clause as standing by itself and as unaffected by any of the remaining language of the section.
 
 
 11
 Arguably, the section is ambiguous because of its use of "unsafe condition of such equipment" in the "because" clause and of "unsafe condition" in the second and third sentences which follow. Duff would incorporate "unsafe condition" into the "when" clause, so that the section would apply only to regulations covering safety or health hazards due to the unsafe condition of a vehicle or its equipment. Since 49 C.F.R. Sec. 392.14 (1987) deals only with the operation of a vehicle in adverse weather, duff argues that 49 U.S.C. Sec. 2305(b) does not apply to the instant case.
 
 
 12
 On the other hand, the Secretary's reading of the statute would result in the discharge prohibition in 49 U.S.C. Sec. 2305(b) applying when an employee refuses to operate a vehicle, either because to do so would violate a regulation, or because he harbors a reasonable apprehension of serious injury due to the unsafe condition of the vehicle. Under this reading, the language of the second and third sentences limits only the second ground for refusal. Because the Secretary's interpretation appears reasonable, requires no revision or limited interpretation of the language used in the section, and must be accorded deference, we agree with and adopt that interpretation. Whiteside, 834 F.2d at 1292.
 
 III. INTERPRETATION OF 49 C.F.R. Sec. 392.14
 
 13
 We are next asked to determine whether the Secretary was correct in determining that 49 C.F.R. Sec. 392.14, promulgated by the Department of Transportation, impliedly prohibits the commencement of operation of a commercial motor vehicle under ultrahazardous conditions.
 
 
 14
 49 C.F.R. Sec. 392.14 (1987) reads, in pertinent part:
 
 
 15
 Extreme caution in the operation of a motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction.... If conditions become sufficiently dangerous, the operation of the vehicle shall be discontinued and shall not be resumed until the vehicle can be safely operated.
 
 
 16
 The Secretary concluded that, since the regulation requires discontinuance of runs "if conditions become sufficiently dangerous," it necessarily prohibits the commencement of runs when such conditions exist.
 
 
 17
 The Secretary's interpretation is reasonable and not inconsistent with the regulation. An absurd situation would be created if the regulation were interpreted as requiring the discontinuance of one driver's run but permitting an employer to require another driver to commence a run at the same time and place.
 
 IV. SECRETARY'S FINDINGS OF FACT
 
 18
 Duff's petition also asks us to review the Secretary's finding that Robinson's refusal was justified under the weather conditions existing and predicted at the time. The Secretary ruled that the determination of whether sufficiently dangerous conditions exist requires the exercise of judgment and is ordinarily to be made upon the basis of information available at the time. Under this standard, a driver would not be justified in refusing to drive when he harbored a good faith belief that driving would violate a federal regulation, but the information available did not objectively support such a belief.
 
 
 19
 The standard for reviewing the Secretary's findings of fact is whether they are supported by substantial evidence. 49 U.S.C. Sec. 2305(d)(1); 5 U.S.C. Sec. 706(2)(E). "Substantial evidence [is] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). This court may not review the record de novo, weigh or resolve conflicts in the evidence, or decide questions of credibility. Cf. Myers v. Richardson, 471 F.2d 1265, 1266-67 (6th Cir.1972) (judicial review of fact findings of Secretary of Health, Education and Welfare).
 
 
 20
 The Secretary's findings are supported by the direct testimony of Robinson and his witnesses. Data from the National Climatic Data Center at Louisville indicated that, at the time of his refusal, the depth of the snow was one inch and there was fog and falling snow.
 
 
 21
 The Secretary carefully examined Duff's evidence and concluded that it had not presented any direct evidence to show that driving conditions were not hazardous at the time of Robinson's refusal, or that his reliance upon weather predictions and highway patrol reports was unreasonable.
 
 
 22
 Duff's evidence consisted primarily of records showing that all its other drivers had completed their drives that night without accident or interruption. The Secretary ruled that, while it might be inferred from that evidence that driving conditions were not hazardous, Duff had introduced no other evidence supporting that inference. He noted that none of the other drivers testified, that no evidence was introduced of the driving conditions they encountered, and that two drivers, whose experience might have been relevant, left after the notice was posted that they would be discharged if they refused to drive. He also noted that Duff presented no evidence to show that it would not have been hazardous to drive in fog and falling snow when there was already one inch of snow on the highway.
 
 
 23
 We are unable to say that the determination of the Secretary is not supported by substantial evidence. The successful completion of a mission, in the absence of other evidence, does not necessarily prove that the mission was safe.
 
 V. CONCLUSION
 
 24
 Because we affirm the Secretary's interpretation and findings under the "when" clause of 49 U.S.C. Sec. 2305(b), we do not reach the further issue of whether Robinson was also justified, under the "because" clause, in refusing to drive because of the unsafe condition of his truck.
 
 
 25
 For the reasons set forth above, the decision of the Secretary is affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation